Okay. Please be seated. And welcome, all of you, to this month's sitting of the Bankruptcy Appellate Panel for the Ninth Circuit. I'll begin with some introductions. I'm Judge Lafferty. I sit in the Northern District of California. To my right is my colleague, Judge Frederick Corbett, who sits in the Eastern District of Washington. To my left is my colleague, Judge Jennifer Nieman, who sits in the Eastern District of California. So welcome to your BAP arguments. I think I see some veterans out there, so I'll just make a couple of comments about the proceedings. Those of you who have done this before know that you get 15 minutes, and that's not a lot of time. So generally speaking, you don't spend that time well just reciting your brief. We've read the briefs. We've read the record. We've tried to digest what the trial court did. We've talked among ourselves. We've formed some preliminary thoughts. We have some questions. The most important thing, the most effective thing that you can do as a litigant in this court is answer our questions, because what we're trying to figure out is not whether somebody had a really good story that the judge really should have gone with. Was there a mistake? That's a completely different question. And what you really have to help us figure out is if there was a mistake, what kind of a mistake was it? What can we do about it? And we're going to ask you different kinds of questions. Sometimes the questions go to we're really not sure about something in the record, and you almost certainly know it better than we do. Sometimes we're not really understanding an argument, and we need you to help us clarify something or understand it better so you can get us over the line. In some ways, our questions are the best thing that could ever happen to you, because they'll tell you where we're not sure where you're coming from or where we haven't quite been convinced yet, and that's your chance to get us over the line and get us to the position you want us to be. Okay? The appellant goes first. The appellant will have the burden here, and accordingly, we traditionally ask the appellant if they'd like to reserve some time so you can think about that, and we'll make note of whatever you tell us. There is a clock, which I can see, and I assume you can see a clock as well, and it's really on you to observe that. If you're in the middle of your best argument and you're at 4.59, we're not going to stop you. It's up to you. Okay? We can let you know that you're getting close to or at or within your time, but it's totally your discretion. Okay? All right. With that, let's call the first matter. Inre Mirati, Mack E. Nahore, counsel for appellants Farid Mirati and Leora Mirati. Sanaz Sara Barelyani, counsel for appellee Mehran Jabaharian. Okay. Do you want to reserve a little time? Just three minutes for me, by the way. Okay. Three minutes. You got it. And again, we'll try to let you know if we see you invading it, but it's up to you. Okay. You bet. Go ahead. Good morning. Good morning. This appeal turns on the fundamental of Rule 56 error. The record reflects genuine disputes of material facts as to the value, intent, and insolvency. Yet the Bankruptcy Court granted summary judgment by resolving those issues in appellee's favor, an error that requires reversal. There are four points that I would like to stress to the Court. First, the Bankruptcy Court failed to identify the absence of genuine disputes of material facts and instead resolved them adopting appellee's position. I don't ordinarily stop people this early. Can I see if I can frame this in a way that see if we're agreeing about how this plays? Yes. The gist of this was the Bankruptcy Court was convinced there was a fraudulent transfer, right? Based on the timing of the filing of the deed of trust. And that was really it. I mean, I think she referred to that as breathtaking, right? Yes. Okay. What else do you think the record reflects she relied upon? Because that is a classic badge of fraud for actual intent to fraud, right? So that one she was quite vocal about. Were there others that you thought the record reflects she was relying on? And if so, what were they and why was that wrong? She basically, her whole ruling was based on the timing of the filing. And would you say that's insufficient as a matter of law? Is this a factual question or a legal question? Well, there's a factual question in that the deed of trust, the main for $500,000, that was for a previous debt. And that deed of trust was prepared, notarized, and executed three years before the judgment was obtained in this underlying case. But if it wasn't recorded, it wasn't enforceable, right? Well, the... Or not? Well, Your Honor, when you create a deed of trust for the indebtedness and give it to the creditor, they're the one that's holding it. The debtors were not holding that deed of trust. They signed it, they gave it to them, and it was up to them to file it. And since they found out about this lawsuit, they went ahead and filed it then. Okay. That was out of my... Was it in front of the Bankruptcy Court that the debtor had nothing to do with that? I don't remember that from the papers. Yes, we mentioned it. I even mentioned it... Was it in your papers? ...in oral argument with the judge. And it's in our brief also that this was actually executed and notarized three years before. One of them, the $500,000, should not have been in the discussion, in your view. Correct. And then the second one was the interest on the same judgment, I mean, on the same indebtedness that was from three years before the judgment. And that was also pursuant to the promise that was executed. That was just the interest on it. I do agree that it looks like that it was like some intended, but basically it was for the previous indebtedness that they had already executed a deed of trust. Well, in your argument maybe as well, and maybe I'm just glossing over it, that the intent we're measuring for UVTA purposes is the transferor, right? Not the transferee. I didn't... The intent we have to measure for fraudulent transfer purposes is the transferor. Yes. Right? Not the transferee. What you're saying is the transferor had no intent here, whatever. The transferor had delivered the deed of trust. Yes, yes. Right? So it couldn't have been... The way you're framing it, it could not have been a fraudulent transfer. Correct.  And, you know, I mean, it's very telling that it was three years before and it wasn't... I mean, I keep saying notarized just to show the court that it was not done with an intent to defraud the appellee here. And it was not done with intent to strip all the equity from the property. Okay. And just beating up one other point, if we're relying on Husky, I think the implication of Husky is that it's really only actual intent to defraud that would qualify. So constructive fraud allegation wouldn't fit under Husky? Is that your... Correct. Okay. Got it. And the court also misapplied Husky to this because Husky also talks about the intent. And intent cannot be just done, you know, by the court. It has to be... It's a fact. It's a question of fact of, you know, they have to have a hearing and they have to have a trial. Well, but you're going to do it by inference as well. I mean, even at a trial, right, you're not going to walk up and say, you got me. I did it. You're right. Let me give you all the money back. This is always done by inference, right? So whether it's not a trial or summary judgment, it's inferential one way or the other. Correct?  Okay. But if there's dispute as to the intent, then it's, you know, it's a material fact. That's in dispute. The court... Well, is it... Maybe it's more a matter of credibility that the judge really ought to weigh differently. Well, again, according to the judge, the way... I mean, you can... I'm sure you read the transcript. Yeah. She just like basically... It wasn't all that long. It was a pretty quick hearing. No. She just basically discarded everything else. I mean, no... I mean, she didn't even discuss that, okay, the previous deed of trust that was given three years before the judgment. She didn't discuss any of that. And she just said, because it was filed very close to the judgment, it's fraud. And that was the gist of the argument, that, you know, her basically the total... I mean, that's what she relied on. That was the only thing, the timing, and nothing else. Yeah. Counsel, there's another issue that I want you to comment on your time, is that the total of the deeds of trust was something a little over $800,000, the totals of the amounts secured by the deeds of trust. Let's just assume for a second that that was fraudulent and you could do that. The judgment that was determined to be non-dischargeable was over $2 million. So for a fraud claim, don't you have to look at what the actual damages are here? Do we have it wrong? Is that... If the debtor was correct that there was fraud, what was the amount of the fraud? Is that limited to the 800,000? Well, if the creditor was correct, there was fraud. Right. If the creditor is correct that there was fraud. Well, if you're going to go that route for the sake of argument, it should be actually limited to the $260,000 interest, because previously the trust was executed before the judgment. Okay. If we look at one... But even if we looked at both, it should be limited in your position. That may be something your worthy adversary will want to comment on too, but I think that's a very good point. Yes. I mean, the dischargeability is a very, I think, draconian measure, because even if let's say this $500,000 wasn't there or the $800,000, they wouldn't get that much. And at the time that this was actually recorded, the exemption was only $100,000, $120,000. It was only later on that it changed to $600,000. So at the time, they did not strip all the equity from the house. And that's just basically our whole argument, that the judge should have considered a lot of... How about the argument that came up at the oral argument before the bankruptcy court, that you really didn't respond to the Husky points one way or the other in your opposition to the summary judge motion? Do you want to tell us about that? I believe that was basically an oversight on my attorney that on my behalf prepared the document. What do we do with an oversight? Yeah. What do we do with an oversight? Well, we did discuss it during the argument. So it was referenced. The judge asked me about it and we... She asked you why didn't you talk about it, right? Yeah. She just asked me why I wasn't going to talk about the brief and we discussed it orally. And we brought it up to her attention because it was argued by them. But still, it was addressed. And based on Husky was that she went ahead and issued her ruling. Right. So our problem is if you didn't address it in the pleadings and it was addressed in the bankruptcy court to the extent the judge said, why didn't you address it? And you said, well, we didn't address it. And the judge ruled on Husky. How do we give you any relief now? Well, it's not that if... Again, if we hadn't discussed it during the oral argument, that's another issue. But you can bring up an oral argument. I can argue what... Do I have to look to see if the judge implicitly allowed you to do that? Because it's not so clear. Yeah. I mean, the whole thing was basically five minutes, Your Honor. Did I misunderstand you? You said the plaintiff brought up Husky in oral argument and you responded to that? Is that the first time that Husky was brought up? The Husky was brought up... Well, it was in the moving papers, very short section. And then in the actual oral argument before the judge, it was brought up. I think if I can restate it and see if I've got this wrong. The argument from your worthy adversary was you didn't respond to the Husky points in your opposition to the motion for re-judgment and the bankruptcy court noted that. And then there was discussion, right? Is that fair enough? Correct. And what we do with that discussion is a whole other question. But that's accurate? Correct. Got it. Okay. Thank you. Okay. Go ahead. Basically, you... Okay. You want to reserve five minutes? ... your questions. You want to reserve five minutes? Take care of all my notes. Okay. All right. All right. Thank you. Nothing like expedition. Thank you. Okay. Good morning, Your Honors. Good morning. May it please the court. Sanaz Berliani appearing on behalf of Mehran Javaharian, Apali. This case is about debtors who recorded deeds of trust 15 days before a judgment in state court for 1.8 million... Was it the debtors or was it the secured creditor that recorded the deeds of trust? Well, the secured debtors which... Well, the secured creditors which are family friends or insiders of the debtor. So that's why I referenced them. That's another batch of fraud there, you'd say, right? Yes. Okay. But can we get to kind of... I don't want to derail your wonderful argument.  We've got two big questions for you. You got a hint, one of them, from Judge Corbett's excellent question before. Husky stands for the proposition that not all fraud under A2A has to be representational. There are things that can be done that are fraudulent that are actual fraud within the meaning of 523 A2A. And one of them might well be an actually fraudulent transfer, right? What Husky doesn't tell us, it tells us you still have to have causation because that's part of A2A. It doesn't exactly tell us how that works. It does indicate that, well, for example, there could be causation if the fraudulent transfer was to the defendant, right? And then it sends its case back to have the court deal with that. One question I think we're all struggling with here is if you got a breach of contract, breach of guarantee judgment, okay? Two million some odd dollars. Thereafter, the debtor and good friends do some things that make it hard for you to collect that judgment. How is the money obtained by fraud? Help us with that part because that's a real sticking point here. That's a great point. I hope there's a great answer. Yes, I have an answer for that. In regards to the obtained by element, that is resolved by Moogler versus Benning. I'm sorry? Moogler versus Benning. Okay. Was that in your papers? I can check my... You know, I'll tell you and I'm not... This is just an observation, okay? It may not be because there was only a rather glancing reference to this problem in the appellant's opening brief, so you may not have focused on it. It's nonetheless a problem, we think. I don't know if the specific case of Moogler is in there, but I did reference, I believe, obtained by and I could double check it. So help us how that works. How does that work? Obtained by was determined by the Moogler case that it doesn't have to be a direct benefit. It could be an indirect benefit. Here, the indirect benefit was that the Maradis were able to still maintain control and discretion of their home and their equity. Well, let's say... We'll come back to that in a minute. We still have to get to causation here, which I don't think that entirely addresses. But Judge Corbett's question was, okay, in the best of all worlds, from your perspective, what the debtor did was hide $800,000 of equity so you couldn't get it. Why is there a judgment for fraud for $2.2 million? How does that possibly follow? They looked at the fraudulent acts as being under common law. Fraudulent intent encompasses fraudulent or deceptive acts. But the damages on that measure could only have been the $800,000, right? How could you get to $2 million of a fraud claim from what you allege the debtor and friends did? Well, their actions just prevented any type of collections. $800,000 worth. $800,000, right. One of the elements for a fraud claim, all the elements of misrepresentation and so forth. But at the end, you could have some fraudulent or misrepresentations, but it caused no damage. Here, if the misrepresentations you base the claim on were, in fact, made, what damages did your client suffer? And we see what they transferred away was about $800,000 worth of value. So why isn't the non-dischargeability judgment limited to that $800,000? I don't think that was addressed. However, I would say that the $800,000 that was hindered and delayed, the amount is besides the point. It's the act that's the most important, and so that opens the door for the full value to be seen as non-dischargeable. That kind of gets us back to causation, which is you had a perfectly valid prepetition judgment for $2.2 million for breach of contract, breach of guarantee. That's clearly dischargeable. Well, needs of trust are recorded. Bankruptcy gets filed. At that point, and I think this did come up during the hearing, it wasn't entirely resolved. I know it was resolved in another fashion by actions the trustee took. At that point, you are no longer the plaintiff in a fraudulent transfer action. You can't do that. That's up to the trustee. So you can rely on it, theoretically, under Husky, to allege that, yeah, there was fraud in this transaction, but it's a totally different transaction from the one that got you the judgment. We're struggling with the causation part. So I will suggest to you, even if the Moogler case is helpful, tell me how that got addressed and how the bankruptcy court resolved that in the 14-page transcript that we got to read. So basically, if there is no competing inference, the court can look at the circumstantial evidence in order to determine if there is fraud. But that's whether there was a fraudulent transfer. Right. But that has nothing to do with the judgment you got, again, right? Well, the fraudulent transfer, the fraudulent conveyance allows for determination of fraudulent intent, which is needed. But with respect to the fraudulent transfer, not with respect to the $2 million judgment you got, right? Those are two totally different things. Well, it turns a possibly non-dischargeable judgment into a non-dischargeable. If there's causation. Yes. Well, that's what we're struggling with here. Okay, the causation, I would say, is looking at the circumstantial evidence, the badges of fraud, that there is fraudulent intent here. Okay. Well, again, one argument from this side is that that was there because the judge didn't have enough to get to a determination on summary judgment. That's one issue. But another issue that we're really struggling with here is where's the causation between the perfectly lovely $2 million commercial judgment that you got, they didn't pay a debt, they guaranteed it, and the alleged later fraud that made that harder to collect. I mean, that's really, I mean, the second piece of this, if it's fraud, we have to tie that back to the judgment that you got. It's the act of recording the illusory notes and the timing. Okay, but the act of recording the notes caused your client to lose $800,000 worth of equity, not $2 million. Well, that potentially and more. He speaks about the homestead protection being $100,000 or $600,000. I think that's just besides the point. It just totally took away my client's right to collect whatever that amount would have been. He could have just sat on the property until the value went up and collected the full amount. So I don't think that you're just limited to that particular deed. It's the full picture. And again, going back to the record, if you're right that one could articulate a fraud connection and that, well, now you have the benefit of not having to pay my judgment, was any of that discussed and resolved at the bankruptcy court level? Because if it was, I sure as heck didn't see it. No, I think that there was no evidence brought by the... So should we remand to have the judge consider that? Because this is an argument that I don't think was... I think the main issue here is that Judge Saltzman ruled properly because the Moratti's did not provide any evidence that would provide a competing inference. And so she had nothing to go by. And the only inference she had was the information that we provided. Mr. Moratti provided a self-serving declaration. Okay, I'm getting at a different point, which is that this causation argument that we're raising now does not appear to have been discussed at all at the bankruptcy court. We raised it. You cite a case that you tell us would support the proposition that their later fraudulent activity could provide some kind of causation. Okay, that was not on anybody's radar when the judge was determining that this was a fraudulent transfer and Husky justified a judgment here. So if we have a problem with causation, would the right answer be to remand this and have the bankruptcy court hear your wonderful arguments about Moogler? I think that there's enough on the record for this panel to rule de novo here instead of remanding back to the bankruptcy court with Judge Saltzman. I don't think there's a necessity to... I've been interrupting you from the beginning, so you go ahead and finish your argument. Thank you for dealing with our questions. They're important to us. Definitely. I guess at this point I wanted to just speak about the undisputed facts that compel a single inference. There was no other reasonable inference. As I mentioned under Nigro v. Sears-Robach, a self-serving declaration without evidence is not something that can be taken into consideration. So even if we went back to Judge Saltzman, there would be no additional evidence that would help her decide if there was a reason to go to trial or not. I think that that was the only thing. And in regards to Husky and obtained by, I believe that just going by the common law definition of actual fraud, that this is a very squarely put example of fraudulent action. And in terms of not receiving a direct benefit, I think as long as... This is something that Judge Thomas brought up on dissent in Husky as being possibly problematic. But they didn't rely on Moogler at the time. And now the Ninth Circuit has Moogler that we can rely on. I'm sorry? The Ninth Circuit has Moogler that we can rely upon in terms of the obtained by. I don't think going back to the bankruptcy court would provide any different answer. Let me try a different version of what I think is Judge Corbett's question. Let's just say there weren't a bankruptcy. Okay. And your client had a $2 million judgment. And your client thinks that the debtor and friends squirreled away $800,000 worth of value. What would your remedy be? Bring a fraudulent conveyance action in state court. And what would you get if you did that? Set aside the two... You might get a lien on the thing transferred, right? I would put on a lien, yes. Okay. Why do you get a $2 million fraud judgment here? I'm sorry? Well, if the remedy, absent the imposition of a trustee, if the remedy would have been limited to the thing transferred, why is it any different here? I don't think that it would be limited to that. The Homestead also... No, no, no. In terms of what you could get out of a fraudulent transfer, you'd get the thing back. And you'd get a lien on the thing, okay? You wouldn't get a fraud judgment for $2 million. Under the UVTA, you just wouldn't. So why do you get one now? That's a fair point. Okay. That's... And look, this is really hard. Fraudulent transfer cases are difficult. They're difficult at summary judgment. I mean, I've granted them and published decisions at summary judgment. I know it's doable, but it ain't easy. So we're taking this very seriously. And I want to thank you for the very constructive back-and-forth you've had with us. It's been very helpful. Okay.  And you've got your minutes. I don't mean to interrupt you anymore. So if you have any final points, go ahead. No, I think everything was decided. I don't think you can necessarily parse a value just because values change. And it was the fact that there was a... Their fraudulent act should not allow them to benefit by just receiving a partial judgment versus the full. Thank you. Thank you very much. Thank you. Just a couple of quick points. First of all, we did file the notes of judicial notice. I don't know if Your Honors saw that. Yeah, I think we'll deal with that in what we call the dispo. Thank you. Yes, basically, this goes to the point that Judge Corbett brought up regarding the amount of the, you know, let's say fraudulent activity. And what happened was subsequently, this matter, after taking away the two deeds of trust that were recorded, the trustee went ahead and appraised the property and found out how much equity is in it, took away my client, deducted the homestead exemption, and whatever was left, my client paid it to the trustee. So basically, that's how much they would have received. That was $500,000. And another thing is, you got to also, if you look at fraudulent intent or fraudulent activity, what was my client's incentive in that? Because he's just, like, replacing one creditor for another. If you read the scholarship on this, the running question is, are we really talking about preference claims and not fraudulent transfer claims? You get to that point. And that's your point, right? Correct. But the point is, your client liked one creditor better than another. He's going to be out the money anyways, regardless of who... Actually, couldn't your client have benefited by transferring that equity to a friend that would not have executed on their house so that they could stay there? Isn't there a benefit to having a friendly creditor as opposed to someone that you've been in litigation with and got a $2 million judgment and doesn't like you? Well, regardless of how you look at it, my clients were not going to lose their house. Even if... That's why we have the judicial knowledge, to show that they did obtain a loan to pay whatever equity was in the house to keep the house. And right now, they have the house, they paid the $500,000, and they still have the two liens on the property. This isn't an 11, right? So there's no substantial contribution plan that this creditor might have made. Because what happened here is, they brought to light something that sure looks like a fraudulent transfer. The bankruptcy court said, well, I can't grant these folks that because they're not the trustee. The trustee woke up, threatened to sue somebody, and you settled it, right? You settled a fraudulent transfer plan. It's the essence of it, right? Yes, and my client basically, they gave away their homestead exemption. I get it. I get it. Okay. I get it. Do you want to talk about causation at all? Well, I believe you already understand that we have a problem with causation because there was no fraudulent $2.2 million act here. And they cannot show that they lost that money. And again, the intent matters. That's a statement of fact. And there was no, I mean, the judge didn't even discuss that, okay, $500,000, $50,000 of this was actually done before the judgment. But she just put both of them together, and then she went ahead. And also, I don't think that even the $260,000 interest is fraudulent because it was based on a promissory note that was already executed about, you know, six, seven years prior to, you know, this whole thing. And so they were just like trying to basically, I mean, they had no control over the deed of trust, the $550,000 being recorded. When? Because the creditor had it. Well, can we put it differently? There's no evidence about that in the record. Well, there is. The deed of trust itself, it shows when it's recorded. No, no, no. There's no evidence in the record about who said what to whom between your client and their very good friends who didn't record a deed of trust for three years. Nothing about that, right? And maybe that's a problem, too. Right. I understand what you're saying. Okay. There was actually the document itself, it says that it was executed, and basically you don't keep it yourself if you're executing a deed of trust. Because remember, the recordation is a transfer, right? The recordation is a transfer. That would have been the fraudulent transfer, the recordation, not the giving of the thing. Right. But then again, you don't execute a deed of trust and have it notarized and then keep it. Well, unless you're really good friends with the person who gave it to you, which is kind of the problem here, right? I mean, that may all have to get resolved later. We'll see. Right. But there was no problem then. When it was executed, there was no judgment. There was nothing. Well, that's maybe to be determined.  All right. So go ahead. Yeah, okay. Thank you, Your Honor. Thank you for your very good arguments. We will take the matter under submission and we'll get you a written decision as soon as we can. Thank you. Thank you very much.
judges: Lafferty, Corbit, and Niemann